UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 09-CV-2947; 09-CV-4281; 09-CV-3344; 09-CV-2504; 09-CV-5633 (JFB)(WDW)
_____

GILBERT ROMAN,

Plaintiff,

VERSUS

NATIONAL SECURITY AGENCY, ET AL.,

Defendants.

_____

**MEMORANDUM AND ORDER**
February 22, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff *pro se* Gilbert Roman ("plaintiff" or "Roman") brought the above-captioned actions separately and individually against the National Security Agency ("NSA"), the Central Intelligence Agency ("CIA"), the National Reconnaissance Office ("NRO"), and the Defense Advanced Research Projects Agency ("DARPA") (collectively, "defendants") requesting that they produce records responsive to his requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006). Defendants argue that they have performed reasonable searches and produced all relevant documents to plaintiff other than documents subject to FOIA exemptions. Defendants now move for summary judgment dismissing plaintiff's complaints pursuant to Federal Rule of Civil Procedure 56. As set forth below, the Court finds that each defendant performed a reasonable and adequate search in full compliance with FOIA. Moreover, where a defendant withheld documents pursuant to a FOIA exemption, the defendant did so properly. Accordingly, the Court grants summary judgment to defendants.

I. BACKGROUND

A. Facts

The Court has taken the facts described below from the parties' affidavits, exhibits and each defendant's[1] Local Rule 56.1

---

[1] Specifically, the Court has taken the facts from the

Statement of Facts. In ruling on a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

Plaintiff has filed nearly identical FOIA requests with the NSA,[2] NRO,[3] and DARPA[4] for information related to functional magnetic resonance imaging ("FMRI") technology that plaintiff believes is being used by the agencies against U.S. citizens to control their thoughts. In two separate decisions, the NSA concluded that Roman's requests were outside the purview of the agency. (NSA's 56.1 ¶¶ 2, 3, 6, Exs. B, E.) Roman appealed the NSA's decision with respect to his March 6, 2009 request, and the NSA's Deputy Director upheld the agency's decision. (*Id.* ¶ 4, Ex. C.) After Roman initiated the instant lawsuits against the agency, the NSA conducted searches of its database for topics similar to what Roman was requesting so as to craft a reasonable search in response to his requests.[5] (*Id.* ¶ 12.) The NSA located a similar request in response to which the NSA had conducted an "Agency-wide" search for documents and concluded that the one responsive document found was exempt pursuant to FOIA Exemption 3, 5 U.S.C. § 552(b)(3). (*Id.* ¶¶ 12-14, 16, 17.)

DARPA was unable to find responsive documents based on the information provided in plaintiff's initial request for "information on FMRI technology." (DARPA's 56.1 ¶ 7.) After receiving plaintiff's complaint in this suit, however, DARPA was able to identify and search, based on information provided by plaintiff in Exhibits Z-1 and Z-2, the subject area concerning Neurotechnology for Intelligence Analysts ("NIA"). (*Id.* at ¶ 8.) DARPA located 15 documents (consisting

---

[1] NSA's Local Rule 56.1 Statement of Facts ("NSA's 56.1"), the CIA's Local Rule 56.1 Statement of Facts ("CIA's 56.1"), the NRO's Local Rule 56.1 Statement of Facts ("NRO's 56.1"), and DARPA's Local Rule 56.1 Statement of Facts ("DARPA's 56.1"). The NSA's Local Civil Rule 56.1 statements are identical in the separate actions Roman brought against the NSA.

[2] A March 6, 2009 request, No. 09-CV-2947, asked for "information on [f]unctional magnetic resonance imaging . . . [t]he date it was put into service [and] . . . [t]he first successful report on the first person it was used on successfully." (NSA's 56.1 ¶ 1, Ex. A.) A July 18, 2009 request, No. 09-CV-4281, demanded "1. Information on the technology that allows you to send thoughts or implant thoughts To [sic] the person you are focused on. 2. The day it was perfected; the report on the first person it was used against successfully. 3. The report on how you can also cause behavior; with this technology, 4. A complete search of all records from top secret to lowest level; to include stored and Vaulted micro-film or documents records. 5. This information could be under W.A.R.P. systems but as you know you could hide records Under [sic] any name and get a no records response." (*Id.* ¶ 5, Ex. D.)

[3] On May 14, 2009, plaintiff submitted a FOIA request to the NRO seeking 1. "Information on Functional magnetic resonance imaging"; 2. "The date it was put into service"; and 3. "The first successful report on the first person it was used on successfully." (NRO's 56.1 ¶ 1, Ex. A.)

[4] On October 22, 2009, Roman requested that DARPA provide him with 1. "information on FMRI technology . . . [; 2.] The date it was perfected . . . [; 3.] The first report on the first person it was used against successfully . . . [; 4.] A present list of all agencies presently using FMRI technology . . . ." (DARPA's 56.1 ¶ 1, Ex. 1.)

[5] In connection with a motion for summary judgment, it is permissible for the Court to consider searches conducted by agencies after the complaint was filed. *See, e.g.*, *Tunchez v. U.S. Dep't of Justice*, No. 10-5228, 2011 U.S. App. LEXIS 5194, at *1-2 (D.C. Cir. Mar. 14, 2011); *Moore v. FBI*, 366 Fed. App'x 659, 661 (7th Cir. 2010).

2

of 183 pages), which it provided to plaintiff by letter dated March 15, 2010. (*Id.* at ¶¶ 10, 12.)

Upon receiving plaintiff's May 14, 2009 request, the NRO indicated to plaintiff by letter, dated May 21, 2009, that the request did not contain "sufficient specificity (as to their type, origin, etc.) to conduct an organized, non-random search of our records systems." (NRO's 56.1 ¶ 2, Ex. B.) Plaintiff's May 14, 2009 request also referenced a previous request, dated March 9, 2009, for the same information. (*Id.* at ¶ 3, Ex. A.) The NRO initially informed plaintiff it had no record of the March 9, 2009 request. (*Id.*) Subsequently, however, NRO located the March 2009 request and apologized to plaintiff for the delay. (*Id.*) In response to the NRO's May 21, 2009 letter, plaintiff submitted additional correspondence with 12 pages of exhibits. (*Id.* at ¶ 4.) By letter dated July 1, 2009, the NRO informed plaintiff that a thorough search had resulted in the identification of no responsive records. (*Id.* at ¶ 8.) Plaintiff appealed, and the NRO affirmed its "no records response." (*Id.* at ¶ 11.) In February 2011, the NRO conducted an additional search for records responsive to plaintiff's court filing. (*Id.* at ¶ 12.) The NRO located two articles relating to a 1990s program that developed techniques to combat breast cancer. (*Id.*)

Plaintiff's FOIA request to the CIA was distinct from those to the NSA, NRO, and DARPA. Roman submitted a FOIA request to the CIA on March 6, 2009, asking for "all copies of the Freedom of Information Processing forms used on all of my request [sic] to your agency over the years. . . . [t]o include dates, times used to search for information and the printed names and signed names of the person performing the task." (CIA's 56.1 ¶ 1, Ex. A.) The CIA responded in a letter dated April 24, 2009, indicating that the only previous FOIA request on record with the CIA was dated April 21, 1999, and that the CIA had already responded to that request. (*Id.* ¶ 8, Ex. E.) Plaintiff subsequently submitted another letter to the CIA, dated May 1, 2009, asking for "FOIA task sheets of all my request [sic] from your agency to me, over the years." (*Id.* ¶ 12, Ex. F.) The CIA did not respond because it considered this letter duplicative of Roman's March 6, 2009 request. (*Id.* ¶ 12.) On June 11, 2009, the CIA sent Roman a final response to his March 6 request, informing him that the CIA re-reviewed information that it had previously denied in response to the April 21, 1999 FOIA request and, as a result, released fourteen additional documents to Roman that contained deletions made in accordance with FOIA Exemption 3, 5 U.S.C. § 552(b)(3). (*Id.* ¶ 13, Ex. G.) Plaintiff appealed this decision in a letter dated June 18, 2009, noting that the CIA failed to send "clear documents" and failed to "send time logs on how many minutes or hours were used to process My request." (*Id.* ¶ 14, Ex. H.) The CIA declined to accept this appeal as it considered it duplicative. (*Id.* ¶ 15, Ex. I.) The CIA explained that copies provided to plaintiff were no more legible than the original documents. (*Id.* ¶ 16.) After Roman filed his complaint, the CIA re-reviewed his FOIA request and concluded that it had missed eight additional responsive documents but only provided two redacted documents to Roman in a letter dated December 2, 2009, asserting that the other documents were subject to FOIA Exemptions 3 and 5, 5 U.S.C. §§ 552(b)(3), (b)(5). (*Id.* ¶¶ 25-26, Ex. J.) In explaining why the eight documents were missed in originally reviewing plaintiff's March 6,

3

2009 FOIA request, the CIA stated that it had "overlooked the fact that processing forms were generated in response to plaintiff's April 21, 1999 FOIA request" after the original cut-off date used in processing plaintiff's April 21 request when first received. (*Id*. ¶ 24.) Thus, the CIA had erroneously believed that, because the only FOIA request from Roman received prior to March 6, 2009 was the April 21, 1999 request, all documents responsive to his March request would have already been provided in response to his April request. (*Id*.)

### B. Procedural History

Plaintiff filed two separate actions against the NSA. The first action was filed on July 9, 2009, No. 09-CV-2947. In that case, the NSA filed a motion for summary judgment on June 18, 2010. Plaintiff responded on June 29, 2010,[6] and NSA replied on August 5, 2010. At a telephone conference on January 19, 2011, in response to inquiries from the Court, the government agreed to file supplemental affidavits and to file renewed motions for summary judgment. On August 16, 2011, the NSA filed the instant motion for summary judgment. Plaintiff responded on August 26, 2011. The NSA filed its reply on November 18, 2011.

Plaintiff filed his second action against the NSA on October 5, 2009, No. 09-CV-4281. The NSA filed a motion for summary judgment on June 18, 2010, plaintiff responded on June 29, 2010, and the NSA replied on August 5, 2010. After the January 19, 2011 telephone conference, NSA filed a renewed motion for summary judgment on August 16, 2011. Plaintiff responded on August 26, 2011, and NSA replied on November 18, 2011.

On May 29, 2009, plaintiff filed the instant action against the NRO, No. 09-CV-2504. On March 12, 2010, the NRO filed a motion for summary judgment. Plaintiff filed his responses on March 24 and March 30, 2010. The NRO, in turn, responded on May 4, 2010, and plaintiff submitted supplemental evidence in response on May 12, 2010. After the January 19, 2011 telephone conference, the NRO filed the instant motion for summary judgment on August 15, 2011. Plaintiff responded on August 26, 2011, and the NRO replied on November 18, 2011.

On December 23, 2009, plaintiff filed the instant action against DARPA, No. 09-CV-5633. On June 7, 2010, DARPA filed a motion for summary judgment. Plaintiff responded on June 23, 2010, and DARPA, in turn, submitted its reply on July 13, 2010. Following the January 19, 2011 telephone conference, DARPA filed the instant motion for summary judgment on March 18, 2011. Plaintiff filed an opposition on April 13, 2011, and DARPA replied on November 18, 2011.

On July 28, 2009, plaintiff filed the action against the CIA, No. 09-CV-3344. On March 5, 2010, the CIA filed a motion for summary judgment. Plaintiff responded on March 24, 2010, and the CIA, in turn, filed a reply on April 30, 2010. Following the telephone conference on January 19, 2011, the CIA filed a motion for summary judgment on July 18, 2011. Plaintiff

---

[6] Additionally, plaintiff's January 15, 2010, letter was construed as his response to the NSA's motion for summary judgment pursuant to an Order dated September 2, 2010.

4

responded on August 4, 2011, and the CIA replied on November 18, 2011.

The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

Moreover, where the plaintiff is proceeding *pro se*, the Court must "construe

[the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (alterations in *Weixel*)). Though a *pro se* litigant's pleadings are afforded wide latitude, a *pro se* party's "bald assertion," completely unsupported by evidence, is not sufficient to defeat a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Instead, to overcome a motion for summary judgment, the non-moving party "must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal citations omitted); *see also Morris v. Ales Group USA, Inc.*, No. 04 Civ. 8239 (PAC), 2007 U.S. Dist. LEXIS 47674, at *10 (S.D.N.Y. June 28, 2007) ("[T]o survive summary judgment, plaintiff's facts 'must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.'") (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981)).

### III. DISCUSSION

#### A. Applicable Law

The central purpose of FOIA is to "ensure an informed citizenry . . . [which is] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *accord U.S.D.O.J. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citation omitted). Under the statute, "any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994), *cert. denied*, 513 U.S. 1015 (1994); *accord Ortiz v. Dep't of Health and Human Servs.*, 70 F.3d 729, 732 (2d Cir. 1995), *cert. denied*, 517 U.S. 1136 (1996). FOIA confers jurisdiction on the district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B); *U.S.D.O.J. v. Tax Analysts*, 492 U.S. 136, 142 (1989). However, "jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records. Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *Tax Analysts*, 492 U.S. at 142 (internal quotation marks and citation omitted).

Accordingly, "[i]t is the responsibility of the federal courts to conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure. The burden of proof, upon such review, rests with the agency asserting the exemption, with doubts resolved in favor of disclosure." *A. Michael's Piano, Inc.*, 18 F.3d at 143 (citations omitted). A district court "may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Cent.*

6

*P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quotation marks omitted) (emphasis in original). "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden . . . [and] are accorded a presumption of good faith." *Carney v. U.S.D.O.J.*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied* 513 U.S. 823 (1994) (citation omitted); *see also Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam); *Malizia v. U.S.D.O.J.*, 519 F. Supp. 338, 342 (S.D.N.Y. 1981). When agency submissions are adequate on their face, a district court has the discretion to "forgo discovery and award summary judgment on the basis of affidavits." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980); *accord Maynard*, 986 F.2d at 556 n.8; *Simmons v. U.S.D.O.J.*, 796 F.2d 709, 711-12 (4th Cir. 1986). "In order to avoid summary judgment and proceed to discovery once the defending agency has satisfied its burden, 'the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations.'" *Labella v. FBI*, No. 07 Civ. 2330 (NGG)(LB), 2008 U.S. Dist. LEXIS 37847, at *18 (E.D.N.Y. May 8, 2008), *aff'd* 332 Fed. App'x 715 (2d Cir. 2009) (quoting *Carney*, 19 F.3d at 812); *Carter v. U.S. Dep't of Comm.*, 830 F.2d 388, 393 (D.C. Cir. 1987) ("[T]he mere allegation of bad faith does not undermine the sufficiency of agency submissions. There must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions.") (citations omitted). Because plaintiff is representing himself *pro se*, the Court has construed his papers liberally.

An agency responding to a FOIA request need not "take extraordinary measures to find the requested records, but only to conduct a search 'reasonably designed to identify and locate responsive documents.'" *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) (citation omitted); *see also Amnesty Int'l USA v. C.I.A.*, No. 07 Civ. 5435, 2008 U.S. Dist. LEXIS 47882, at *26 (S.D.N.Y. June 19, 2008) (citing *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) and *Garcia*, 181 F. Supp. 2d at 368); *Marrera v. Dep't of Justice*, 622 F. Supp. 51, 54 (D.D.C. 1985) (citations omitted). A search is "reasonable and adequate even if 'it fails to produce all relevant material.'" *Garcia*, 181 F. Supp. 2d at 368 (quoting *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986)). As noted above, an agency affidavit that is reasonably detailed, and made in good faith, will be deemed sufficient by this Court for purposes of this motion. An agency affidavit is sufficient where it "identif[ies] the searched files and describe[s] at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *Rabin v. U.S. Dep't of State*, 980 F. Supp. 116, 120-21 (E.D.N.Y. 1997) (quotation marks omitted) (noting that the affidavit in question "does not describe the general structure of the Agency's record keeping system, or the methods by which the Agency generally conducts its searches . . . [and] which of the Agency's files were searched in response" to the request.); *see also Katzman v. C.I.A.*, 903 F. Supp. 434, 438 (E.D.N.Y. 1995); *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 298 (D. Conn. 2008) ("A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring

7

that all files likely to contain responsive materials (if such records exist) were searched, is necessary . . . to allow the district court to determine if the search was adequate in order to grant summary judgment." (quotations omitted)).

Based on the defendants' declarations, which are sufficient to satisfy the criteria discussed above, the Court finds that each defendant has demonstrated that it properly responded to plaintiff's FOIA requests by conducting reasonable and adequate searches, in full compliance with FOIA. Moreover, as discussed below, where a defendant withheld documents pursuant to an exemption to FOIA, the Court finds that the documents were properly withheld. The Court addresses each defendant in turn.

### B. NSA

The NSA provided a declaration from Diane M. Janosek, Deputy Associate Director for Policy and Records for the NSA, in both of its disputes with Roman. The affidavit provides a detailed outline of the NSA's FOIA policies and procedures and guides the Court through what happens to a FOIA request once it is received by the agency. (Janosek Decl. ¶¶ 7-11.) The affidavit explains that the NSA initially responded to plaintiff's request for information concerning "functional magnetic resonance imaging" by stating that the request was not within the purview of the agency because the agency interpreted it to refer to the use of magnetic resonance imaging technologies for medical purposes. (*Id.* at ¶¶ 18-19.) Nonetheless, the agency "also conducted a reasonable search of its FOIA database of all FOIA cases for similar topics." (*Id.* at ¶ 20.) That search revealed "a search of responsive documents that had been made for a similar topic for a near-contemporaneous requester." (*Id.*) That requester had submitted a much more detailed FOIA request to the NSA concerning FMRI technology. (*Id.*) In response to the near-contemporaneous requester's submission, NSA's FOIA Office had searched for and located a similar prior search. (*Id.* at ¶ 21.) The NSA used the terms "MRI" and "EEG" in conducting the search. (*Id.*) In that earlier case, the FOIA Office determined that the Polygraph Division of the Associate Directorate for Security and Counterintelligence ("ADS&CI") was the only likely organization to hold responsive documents. (*Id.*) One document, a contract proposal, was located and withheld in full. (*Id.*) "Accordingly," the declaration states, "even if NSA had interpreted the Plaintiff's request to seek the Agency's use of 'functional magnetic resonance imaging' technology for non-medical purposes, the plaintiff would not have been provided any responsive Agency information." (*Id.* at ¶ 26.) The last section of the declaration explains that, pursuant to Public Law 86-36, the National Security Agency Act of 1959, the NSA "is unable to disclose the structure of its internal file system." (*Id.* at ¶ 30; *see* National Security Agency Act of 1959, Pub. L. No. 86-36, 73 Stat. 63 (1959).) Janosek concludes by "aver[ring] that all files likely to contain responsive materials were searched." (*Id.* at ¶ 32.)

The NSA's declaration is a "reasonably detailed affidavit" that "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *El Badrawi*, 583 F. Supp. 2d at 298 (quotations omitted). The NSA reasonably excluded information from

8

the affidavit that would describe the structure of the NSA's internal file system, since it is prohibited by law from doing so. The NSA has set forth sufficient information in its affidavit about its efforts to locate documents responsive to plaintiff's requests for this Court to determine if the search adequate.

Based on the information set forth in the affidavit, the Court concludes that the NSA properly responded to plaintiff's March 6, 2009 and July 18, 2009 FOIA requests.[7] The NSA reasonably considered the request regarding "functional magnetic resonance imaging" to concern medically-related applications outside the purview of the NSA's mission, which entails information assurance and signals intelligence. Since plaintiff's request exceeded the NSA's statutory purview, any search to identify responsive documents would have been futile.

After plaintiff filed the complaint in this action, the NSA re-reviewed its interpretation of plaintiff's March 6, 2009 and July 18, 2009 requests. As set forth in the affidavit, the agency conducted a search for the same topic of documents requested by a near-contemporaneous requester. In that search, the NSA identified a contract proposal document, which it withheld pursuant to FOIA Exemption 3.

FOIA Exemption 3 protects information "specifically exempted from disclosure by statute," if that statute meets certain requirements. 5 U.S.C. § 552(b)(3). Specifically, the statute must "require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). The Supreme Court has set forth a two-part analysis for courts reviewing an agency's invocation of Exemption 3. *CIA v. Sims*, 471 U.S. 159, 167, 105 S. Ct. 1881, 85 L. Ed. 2d 173 (1985). First, the court must determine whether the statute designated by the withholding agency is one properly within the bounds of Exemption 3. *See id*. If so, the court must then determine whether the withheld information meets the requirements of that statute. *See id.*; *see also A. Michael's Piano, Inc*., 18 F.3d at 143; *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990); *ACLU v. DOD*, 389 F. Supp. 2d 547, 554 (S.D.N.Y. 2005).

The applicable "Exemption 3" statute in this case is 10 U.S.C. § 2305(g). This statute is properly within the bounds of Exemption 3 because it leaves no discretion in requiring that certain matters be withheld. *See* 5 U.S.C. § 552(b)(3)(A); *Chesterfield Assocs. v. U.S. Coast Guard*, No. 08-CV-4674 (FB) (VVP), 2009 U.S. Dist. LEXIS 43407, at *3-4 (E.D.N.Y. May 19, 2009). Specifically, 10 U.S.C. § 2305(g) states that contractor proposals "may not be made available to any person under section 552 of title 5." The plain language of the statute is mandatory and not discretionary. Turning to the second prong of the test, the withheld information meets the requirements of 10 U.S.C. § 2305(g). Under 10 U.S.C. § 2305(g)(1), "a proposal in the possession or control of an agency named in section 2303 of this title [10 U.S.C. § 2303]" may not be released. The Department of Defense, of which the NSA is an agency, is one of the agencies

---

[7] The March 6, 2009 request is the basis for the complaint filed in 09-CV-2947. The July 18, 2009 request is the basis for the complaint filed in 09-CV-4281.

9

named in 10 U.S.C. § 2303. Section 2305(g)(2) creates an exception for "any proposal that is set forth or incorporated by reference in a contract entered into between the Department and the contractor that submitted the proposal." 10 U.S.C. § 2305(g)(2). The NSA's "general practice" is not to set forth or incorporate by reference proposals submitted pursuant to a solicitation. (NSA's 56.1 ¶ 17.) Thus, the NSA properly withheld this document in the earlier search. Accordingly, the agency reasonably concluded that interpreting the request to include FMRI technology for non-medical purposes still would not have produced responsive information.

Because the NSA demonstrated that it made every reasonable effort to locate records responsive to plaintiff's March 6, 2009 and July 18, 2009 requests, and properly withheld the one document responsive to earlier, similar requests, the NSA satisfied the standards under FOIA and applicable law. Accordingly, the Court grants summary judgment as to the NSA.

### C.  NRO

The NRO submitted a supplemental declaration from Stephen Glenn, Chief of the Information Access and Release Team at the NRO. Glenn explains that the NRO does not have an official Electronic Records Management System, but it maintains paper and electronic records pursuant to guidelines set forth in the Records Control Schedule approved by the U.S. National Archives and Records Administration. (Glenn Suppl. Decl. at ¶ 3.) After receiving plaintiff's May 14, 2009 request, the NRO searched the following files and databases: Advanced Systems and Technology, Imagery Intelligence Systems Acquisition Directorate, Systems Engineering Directorate, Mission Support Directorate, and Signals Intelligence Systems Acquisition Directorate. (*Id.* at ¶ 4.) The agency used the search terms "Magnetic Resonance Imaging" and "MRI." (*Id.* at ¶ 4, Ex. A.) The NRO found no responsive documents.

On February 3, 2011, the NRO conducted an additional search of these same files and databases, adding the Office of Corporate Communications ("OCC"), in an effort to find records responsive to plaintiff's December 8, 2010 filing, which stated, "NRO R&D has actually been credited with inventing the MRI." (*Id.* at ¶ 5.) Glenn states, "I believe this email reference may have been to a 1990's program that developed techniques to help combat breast cancer." (*Id.*) Glenn describes two documents relevant to that program, which the NRO attached as exhibits to their motion to dismiss. (*Id.*; NRO's Mot. to Dismiss, Exs. B-1 and B-2.) Both of the articles were found in a hard copy file labeled "breast cancer" in the NRO OCC. Although one of the articles does mention the term "magnetic resonance imaging," Glenn avers that these two articles would never have been located using the search criteria requested by plaintiff. (*Id.*) Glenn concludes by "affirm[ing] that all NRO searches, were thorough and reasonable and, given the structure of NRO's files (as set forth above), any further search would be unlikely to disclose additional information." (*Id.* at ¶ 6.)

NRO's declaration sets forth in reasonable detail the manner in which its files are organized, the files NRO searched in responding to plaintiff's request, and the

10

specific search terms used. Glenn further avers that the searches were reasonable and any further research would be unlikely to disclose information. Accordingly, the affidavit satisfies the criteria for granting summary judgment on the basis of agency affidavits. Furthermore, the affidavit demonstrates that NRO's search was reasonable and adequate, and fully compliant with FOIA. NRO did not withhold any documents responsive to plaintiff's request. Accordingly, the Court grants summary judgment as to NRO.

### D. DARPA

DARPA filed a declaration by Patricia A. Rohrkemper, a contractor since November 2005 supporting FOIA activities in the External Relations Office of DARPA. (Rohrkemper Decl. ¶ 1.) Rohrkemper explains that DARPA is a component of the Office of the Secretary of Defense. (*Id.* at ¶ 3.) All FOIA requests therefore fall under the purview of the Defense Office of Freedom of Information ("OFOI"). (*Id.*) DARPA organizes its electronic and paper files by distinct subjects, and maintains an electronic technical library containing all DARPA technical and program documents that have been submitted by DARPA staff and DARPA performers and are approved for public release in an electronic documents repository. (*Id.*)

On December 30, 2009, OFOI tasked DARPA with conducting a search for records responsive to plaintiff's initial request. (*Id.* at ¶ 4.) Because the request was very broad and "failed to identify any specific DARPA research applications that might utilize FMRI technology," DARPA was unable to locate responsive information. (*Id*.) After DARPA received a copy of plaintiff's complaint, however, DARPA was able to use the information provided by plaintiff in Exhibits Z-1 and Z-2, regarding "Neurotechnology for Intelligence Analysis (NIA)," to conduct further searches. (*Id.* at ¶ 5.) Specifically, DARPA conducted a keyword search of its electronic document repository using the following search terms: "Functional Magnetic Resonance Imaging or FMRI, Neurotechnology or Neuro* (*wildcard to locate all variations of word), Amy Kruse (identification of DARPA Program Manager), EEG, and brain." (*Id.*) The agency located 15 documents (consisting of 183 pages) and forwarded them to OFOI. (*Id.*) The declaration concludes by stating that the search "was reasonable given the structure of DARPA's filing system (as set forth above), and the fact that the search was limited to two hours" due to plaintiff's fee constraints. (*Id.* at ¶ 6.)

DARPA's declaration sets forth in reasonable detail the manner in its which its files are organized, the files DARPA searched in responding to plaintiff's request, and the specific search terms used. The affidavit thus satisfies the criteria for granting summary judgment on the basis of agency affidavits. Furthermore, the affidavit demonstrates that DARPA's search was reasonable and adequate, and fully compliant with FOIA. DARPA did not withhold any documents responsive to plaintiff's request, and in fact produced 183 pages of responsive information. Accordingly, the Court grants summary judgment as to DARPA.

### E. CIA

The CIA filed a declaration from Susan Viscuso, current chief of the Public Information Programs Division ("PIPD") of

11

the Office of the Chief Information Officer, to supplement the declaration the CIA had previously filed from Delores M. Nelson, then-chief of the PIPD. Viscuso explains that CIA records relating to the receipt and processing of FOIA requests are maintained in a Privacy Act system of records called "Information Release Records." (Viscuso Decl. ¶ 5.) Records maintained in the system include Privacy Act and FOIA requests, and processing files, which include correspondence and supporting documents. (*Id.*) These records are stored in paper or electronic form. (*Id.*)

Plaintiff, by letter dated March 6, 2009, requested "copies of the Freedom of Information Processing forms used on my entire request to your agency over the years." (*Id.* ¶ 6.) In response, the agency searched the CIA Information Release Records using plaintiff's name, "Gilbert Roman" as the search term. (*Id.*) The search yielded case number "F-1999-00952," which included the records from plaintiff's April 21, 1999 request. (*Id.*) The agency concluded that plaintiff's March 6, 2009 request was similar to the April 21, 1999 request because the 1999 request sought "copies of the forms used to process all of my FOIA and/or PA request to your agency." (*Id* ¶ 6 and n.5.) The CIA responded to the 1999 request by providing 24 processing forms, two of which were released in full and 22 of which were released in part. (*Id.* ¶ 6.) In the course of conducting the search in 2010, the agency discovered several additional records that were responsive to the March 6, 2009 request. (*Id.* at ¶ 7.) The records were processed in accordance with FOIA and two were released to plaintiff in a letter dated December 2, 2009. (*Id.*) In total, CIA's search in response to plaintiff's March 6, 2009 request yielded 32 records. (*Id.*)

Based on those results, Viscuso "aver[s] that all files likely to contain responsive materials were searched, and the records processed and information provided constitute a full response to Plaintiff's 6 March 2009 request." (*Id.*)

Additionally, plaintiff referenced "time logs" in his complaint. (*Id.* at ¶ 8.) The agency conducted a search of the same records system using "Gilbert Roman," searched the F-1999-00952 file, and found no responsive records. (*Id.*) Viscuso explains that there were no records because the CIA does not use a FOIA processing form called a "time log," and, because the CIA did not charge plaintiff for the processing of his April 21, 1999 request, there was no reason to create a time accounting record. (*Id.*) "As such, [Viscuso] aver[s] that all records likely to contain responsive materials for 'time logs' or similar time accounting forms were searched, and that this search yielded no responsive information." (*Id.*)

The CIA declaration sets forth in reasonable detail the files it searched and the search terms it used, as well as avers that all files likely to contain responsive materials were searched and that the records provided constitute a full response to plaintiff's request. Based on this affidavit, the Court finds that the CIA's search was reasonable and adequate.

The CIA withheld the release of six documents pursuant to Exemptions 3 and 5. As discussed above, FOIA Exemption 3 protects information "specifically exempted from disclosure by statute," if that statute meets certain requirements. 5 U.S.C. § 552(b)(3). Specifically, the statute must

"require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). The Supreme Court has set forth a two-part analysis for courts reviewing an agency's invocation of Exemption 3. *Sims*, 471 U.S. at 167 (1985). First, the court must determine whether the statute designated by the withholding agency is one properly within the bounds of Exemption 3. *See id*. If so, the court must then determine whether the withheld information meets the requirements of that statute. *See id.*; *see also A. Michael's Piano, Inc.*, 18 F.3d at 143; *Fitzgibbon*, 911 F.2d at 761; *ACLU*, 389 F. Supp. 2d at 554.

The applicable statute here is section 6 of the CIA Act of 1949, which requires the CIA to protect from disclosure "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 403g. This statute is properly within the bounds of Exemption 3 because it leaves no discretion on the issue of whether the information should be withheld from the public. *See Larson v. Dep't of State*, 565 F.3d 857, 865 n.2 (D.C. Cir. 2009). The CIA deleted material from some of the documents released to plaintiff pursuant to Exemption 3. These deletions concerned the CIA's organization, functions, names and/or official titles, and therefore meet the requirements of 50 U.S.C. § 403g. Accordingly, the CIA properly withheld this information pursuant to Exemption 3.

The CIA also withheld information pursuant to Exemption 5. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption thus protects documents ordinarily privileged in the civil discovery context. *See FTC v. Grolier, Inc.*, 462 U.S. 19, 26, 103 S. Ct. 2209, 76 L. Ed. 2d 387 (1983). Accordingly, "[c]ourts have interpreted Exemption 5 to encompass traditional common-law privileges against disclosure, including the work-product doctrine, and executive, deliberative process and attorney-client privileges." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005). The CIA claims that the deliberative process privilege protects the documents in this case from disclosure.

The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue v. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (quoting *Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). The rationale behind the privilege is "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Id*. (quoting *Klamath*, 532 U.S. at 8-9 (quoting *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 151, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975))).

13

To qualify for this protection, the document at issue must be an inter-agency or intra-agency document that is "(1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually . . . related to the process by which policies are formulated." *Nat'l Council of La Raza*, 411 F.3d at 356 (internal quotation marks and citation omitted); *accord Tigue*, 312 F.3d at 76. The documents must not be "merely peripheral to actual policy formation" and "'must bear on the formulation or exercise of policy-oriented judgment.'" *Tigue*, 312 F.3d at 80 (quoting *Grand Cent. P'ship*, 166 F.3d at 482). Also, "[p]urely factual material not reflecting the agency's deliberative process is not protected." *Local 3, Int'l Brotherhood of Electrical Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988). Finally, if "the agency has chosen expressly to adopt or incorporate by reference a memorandum previously covered by Exemption 5 in what would otherwise be a final opinion," that memorandum would not be protected by Exemption 5. *Nat'l Council of La Raza*, 411 F.3d at 356 (internal quotations, alteration, and citation omitted).

The CIA claims that the two documents released to plaintiff on December 2, 2009 contained material that reflects the predecisional recommendations of the directorates, and that this information was therefore properly deleted pursuant to Exemption 5. Specifically, the two documents are PIPD memos that contained predecisional and deliberative information generated in response to a PIPD tasking. (CIA's 56.1 ¶ 31.) Additionally, the CIA asserts that the six documents withheld on December 2, 2009 were also predecisional and of a deliberative nature. (*Id.* ¶ 32.) The documents were response forms in which the tasked directorate commented on proposed withholding recommendations for specific records. The Court agrees that the information at issue – namely, information concerning a directorate's predecisional responses to a PIPD tasking and comments about whether to withhold documents – is of a deliberative nature and was properly withheld under Exemption 5.

Based on the information set forth in the affidavit, the Court concludes that the CIA properly responded to plaintiff's FOIA requests. The CIA conducted a reasonable and adequate search and appropriately withheld certain documents pursuant to Exemptions 3 and 5. Accordingly, the Court grants summary judgment as the CIA.

## IV. CONCLUSION

For the foregoing reasons, the Court grants summary judgment to the defendants. The Clerk of the Court shall enter judgment accordingly and close the cases.

SO ORDERED

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   February 22, 2012
         Central Islip, NY

Plaintiff is representing himself *pro se*, P.O. Box 170109, Ozone Park, New York, 11417. The attorney for defendants is Robert B. Kambic, United States Attorneys' Office, 610 Federal Plaza, Central Islip, New York, 11722.